13 Neb. App. 896
WANDA K. MACE, NOW KNOWN AS WANDA K. STRANATHAN, APPELLEE,
v.
JERRY D. MACE, APPELLANT.
Nos. A-03-375, A-03-376
Nebraska Court of Appeals.
Filed September 13, 2005.
Phillip G. Wright, of Wright & Associates, for appellant.
Mark S. Bertolini, of Bertolini, Schroeder & Blount, for appellee.
IRWIN, MOORE, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Jerry D. Mace appeals from two separate orders of the Sarpy County District Court, both modifying a decree which dissolved his marriage to Wanda K. Mace, now known as Wanda K. Stranathan. Because both appeals arise out of the same factual background, we address them together in this opinion. In case No. A-03-375, Jerry contests the district court's implementation of our mandate in Mace v. Mace, No. A-01-500, 2002 WL 31002310 (Neb. App. Aug. 27, 2002) (not designated for permanent publication). In case No. A-03-376, Jerry contends that the district court erred in several respects in modifying his child support obligation upon Wanda's October 2002 application.

BACKGROUND
Portions of this opinion are taken verbatim from this court's unpublished opinion in Mace v. Mace, supra.
On July 28, 1992, the district court for Sarpy County entered a decree dissolving the marriage of Wanda and Jerry. The decree awarded Wanda custody of the three children who were born to the marriage: Christopher James Mace, born June 14, 1984; Michael Everett Mace, born June 7, 1988; and Anita Marie Mace, born March 25, 1992. The court found that Wanda had the ability to earn a net monthly income of approximately $450 and ordered Jerry to pay $825 per month for child support.
On March 30, 1998, Jerry filed an application to modify the dissolution decree. In the application, Jerry alleged that he had suffered a work-related injury which resulted in a reduction of his monthly net income. Wanda filed an answer and cross-application to modify the decree. She requested an increase in child support because of increases in both parties' incomes and because of modifications to the Nebraska Child Support Guidelines. Wanda also asserted that Jerry should pay a portion of her daycare expenses.
On January 7, 1999, the district court conducted a modification hearing. Jerry contended that he was entitled to a deviation from the guidelines in calculating his support obligation, based on his obligation to a subsequent child. Kirsty Nicole Mace, the subsequent child, was born March 24, 1993, and on July 3, 1996, Jerry married Tracy J. Mace, Kirsty's mother.
The district court made factual findings on January 15, 1999, and entered its order of modification on January 29. The district court found that since the original decree, Wanda had remarried and was working 35 hours per week, earning $5.25 per hour, for a monthly net income of $725. The court determined that Jerry earned a monthly net income of $1,925 and that Jerry had a low-back condition that prevented him from earning any substantial overtime pay. In addressing Jerry's contention that the court should deviate from the guidelines based on Kirsty, his subsequent child, the district court noted that Prochaska v. Prochaska, 6 Neb. App. 302, 573 N.W.2d 777 (1998), and other cases "clearly established a legal duty of support to the child or children of a subsequent marriage." The district court determined that while Jerry's testimony may have established a moral duty of support, it failed to establish a legal duty, and the court therefore denied Jerry's request for a deviation from the guidelines. The court modified Jerry's support obligation for the parties' three children to $775 per month, ordered Jerry to pay 70 percent of Wanda's work-related daycare expenses, and ordered Jerry to pay $1,500 of Wanda's attorney fees.
Jerry appealed from the modification order. We affirmed the portion of the district court's order awarding daycare expenses and reversed the award of attorney fees because Wanda did not provide any evidence to establish the amount of the fees incurred. We concluded that Jerry's testimony established that he had a legal duty to support Kirsty, and we reversed, and remanded "for a consideration of whether a deviation [from the guidelines] is warranted as a result of Jerry's subsequent child." Mace v. Mace, 9 Neb. App. 270, 277, 610 N.W.2d 436, 441 (2000) (Mace I). On June 26, 2000, a mandate was filed in the Sarpy County District Court ordering the court to enter judgment in conformity with our judgment and opinion.
On June 19, 2000, before the mandate was filed, the district court held its first trial on remand. On June 22, the court entered an order of modification. Jerry again appealed to this court. We dismissed the appeal and vacated the district court's June 22 order for lack of jurisdiction. Mace v. Mace, 9 Neb. App. lii (No. A-00-732, Jan. 3, 2001) (Mace II).
On April 5, 2001, after the mandate was filed, the district court conducted its second trial on remand concerning Jerry's application and Wanda's cross-application to modify regarding the deviation from the guidelines issue. At trial, Wanda's 1999 W-2 forms were received into evidence, along with her 1999 tax return, filed jointly with her husband. Jerry's W-2 for 1999 was received, as well as his and Tracy's 1999 joint tax return. Jerry's counsel noted on the record that the 1999 information was presented in response to the district court's request because the court wanted the most current information available regarding the parties' incomes.
On April 6, 2001, the district court entered an order of modification, determining that Jerry was entitled to a deviation from the guidelines based on his legal obligation to support Kirsty. Based on the deviation and the 1999 income figures, the district court ordered Jerry to pay $804 per month in child support for Christopher, Michael, and Anita. The court also ordered Jerry to pay Wanda $801.12 in attorney fees.
On April 26, 2001, Jerry appealed from the third modification order. In our consequent opinion, we noted, "When computing Jerry's support obligation to Christopher, Michael, and Anita, the trial court considered [Jerry's] obligation to Kirsty. In determining Jerry's obligation to Kirsty, the trial court considered his support obligation to Christopher, Michael, and Anita." This court concluded that although the district court did not abuse its discretion under Prochaska v. Prochaska, 6 Neb. App. 302, 573 N.W.2d 777 (1998) (respective support for multiple families is to be determined by interdependent arithmetic method), and Brooks v. Brooks, 261 Neb. 289, 622 N.W.2d 670 (2001) (no precise mathematical formula is required for deviation from guidelines for subsequent children, and calculations are left to discretion of trial court), in considering Jerry's obligations to both families when it calculated the deviation, it abused its discretion in receiving evidence and making findings regarding the parties' most current incomes. We determined that "we must reverse, and remand so the trial court can calculate Jerry's support obligation using the same calculation method, but using the income figures from the January 1999 order." Mace v. Mace, No. A-01-500, 2002 WL 31002310 (Neb. App. Aug. 27, 2002) (not designated for permanent publication) (Mace III). We remanded "with directions to recalculate Jerry's child support obligation to Christopher, Michael, and Anita using the income figures from the January 1999 modification trial and the calculation method used by the trial court in its April 2001 order of modification that considered Jerry's subsequent child, Kirsty." Id. We further stated, "If the evidence from the January 1999 modification trial is insufficient to determine Tracy's monthly net income for 1995 through 1997, the trial court may receive evidence of her income for that time period. This is the only additional evidence that the trial court may consider on remand." Id.
On October 31, 2002, Wanda filed another application to modify child support, alleging that substantial changes in circumstances had occurred, essentially consisting of increases in both parties' incomes. Jerry filed an answer denying that a substantial and material change of circumstances had occurred.
On February 27, 2003, the district court conducted its third trial on remand and immediately thereafter conducted a trial on Wanda's October 2002 application for modification. During the portion of the trial pertaining to the remand, the court received Tracy's W-2 forms for 1996 and 1997. When Jerry also offered Tracy's W-2 forms for 1993, 1994, 1998, and 1999, the court sustained Wanda's relevancy objections to those exhibits. Jerry's counsel stated that he had provided Tracy's W-2 forms from 1993 and 1994, years outside of the 1995 to 1997 range allowed by this court, "to show the Court that we did make a good effort to try to find '95 and cannot." Subsequently, during the trial on Wanda's October 2002 application, Jerry offered Tracy's W-2 form for 2000, and Wanda objected on relevance grounds. The district court stated, "I'm going to receive it against my opinion that those are not pertinent, but [the exhibit] is received so the Court can have a record of this."
During the trial upon the October 2002 application, Wanda testified that her gross monthly income had increased since the original dissolution action to $888.10. She stated that Jerry's gross income for 2002 was approximately $30,249. The district court received Wanda's calculation of child support, which showed Jerry's monthly net income to be $2,277.88.
Wanda's attorney, Mark S. Bertolini, questioned her regarding attorney fees she had incurred, and Jerry's counsel objected repeatedly. Wanda testified that Bertolini charged $150 per hour, but she was not allowed to testify as to the total of her legal expenses. In sustaining the objection to this evidence, the district court stated to Bertolini:
I think you're going to get an objection, so you might take the stand. That's what happened in the first case, there was an objection, so your exhibit didn't get in in the first case. That's why you didn't get attorney fees. That's why the Court of Appeals feels you need attorney fees.
Bertolini testified that Wanda had incurred $1,023.94 for legal fees and $52.76 for costs. Bertolini had "reviewed various exhibits that were offered in other hearings since the original hearing of 1999 to determine that there was in fact an increase in [Jerry's] income since then." He testified that he recalled using Jerry's W-2 forms, tax returns, and paycheck stubs for "[a]ll the years," including 2001 but not 2002. Bertolini stated that Wanda's income had also increased. Bertolini did not know whether Jerry's income had increased 10 percent. After Bertolini's testimony, Jerry moved to dismiss, and the district court denied the motion. Jerry then testified in regard to the October 2002 application and presented additional evidence.
On March 4, 2003, the district court entered an order acknowledging this court's opinion which had directed the district court to recalculate Jerry's child support obligation "`using the income figures from the January 1999 modification trial and the calculation method used by the trial court in its April 2001 order of modification,'" and, if necessary, using additional evidence of Tracy's monthly net income for 1995 through 1997. The district court nonetheless stated that although it did not receive Tracy's 1998 W-2 at trial, "upon reconsideration, the Court now receives . . . Tracy's 1998 W-2's." The district court determined that Tracy's 1998 income was "pertinent to a decision in January of 1999" and "question[ed] why Tracy's income for 1995 is necessary and why her income for 1996 and 1997 is relevant."
The district court stated that it had used the "`interdependent arithmetic' formula under [Prochaska v. Prochaska, 6 Neb. App. 302, 573 N.W.2d 777 (1998)]" to calculate Jerry's support obligation for Kirsty in the April 2001 modification order. The district court continued:
The Court has taken additional evidence, and Tracy's 1998 income which would be pertinent to a decision in January of 1999, has worked through the figures which are attached hereto as "Interdependent arithmetic under Prochaska v. Prochaska". What this would do would be to further reduce [Jerry's] obligation to $687.00 for the three children  a $138.00 reduction from the 1992 level  only because [Jerry] chose a second family.
Having done the calculations and considering [Jerry's] child Kirsty, the Court notes the Supreme Court decision in Brooks v. Brooks, 261 Neb. 289, 622 N.W.2d 670 (2001), cited by the Court of Appeals in the last remand that does not require the [Prochaska] method.
The district court also went on to quote from a then new paragraph T of the guidelines, which became effective September 1, 2002. The district court concluded, "I find the deviation [from the guidelines] should be to $788.00 per month commencing February 1, 1999." The worksheets attached to the district court's order show that in arriving at $788, the district court used the income figures from the January 1999 order but did not deduct support for Kirsty from Jerry's income or consider Tracy's income in calculating Jerry's child support obligation for Christopher, Michael, and Anita. Jerry now appeals the order from which we have been quoting, as case No. A-03-375.
The district court entered an additional order on March 4, 2003, addressing Wanda's October 2002 application to modify. It increased Jerry's child support obligation for the parties' three children to $825 per month, ordered that he pay $1,024 in attorney fees to Wanda's counsel, and stated, "It appears to the Court that [Jerry] has the ability to earn more if he cares to." The district court further found, "In accordance with guideline T. Limitation on Decrease, the Court finds that the amount of support should be no less than [the amount] ordered in 1992 for 3 children of $825.00." Jerry now appeals this order to this court, as case No. A-03-376.

ASSIGNMENTS OF ERROR
In case No. A-03-375, Jerry alleges (1) that the district court "abused its discretion and had no jurisdiction" to receive certain evidence and to use a method of calculating Jerry's child support obligation different from that specified by the Court of Appeals and (2) that the district court abused its discretion in failing to grant a deviation for Kirsty, Jerry's subsequent child.
In case No. A-03-376, Jerry alleges that the district court erred (1) in granting a modification of child support despite an absence of a substantial and material change of circumstances, (2) in failing to consider Jerry's obligation to Kirsty, (3) in finding that Jerry was capable of increasing his income, (4) in interpreting paragraph T of the guidelines as it did, and (5) in awarding attorney fees to Wanda.

STANDARD OF REVIEW
[1] The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. Pursley v. Pursley, 261 Neb. 478, 623 N.W.2d 651 (2001).
[2-4] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. Elsome v. Elsome, 257 Neb. 889, 601 N.W.2d 537 (1999); Dueling v. Dueling, 257 Neb. 862, 601 N.W.2d 516 (1999); Rauch v. Rauch, 256 Neb. 257, 590 N.W.2d 170 (1999). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. Elsome v. Elsome, supra; Rauch v. Rauch, supra. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. Elsome v. Elsome, supra; Rauch v. Rauch, supra. A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. Dueling v. Dueling, supra.
[5] A district court's award or denial of attorney fees in a proceeding to modify a divorce decree will be upheld absent an abuse of discretion. Hartman v. Hartman, 261 Neb. 359, 622 N.W.2d 871 (2001).

ANALYSIS

Evidence Received and Method of Calculating Child Support.
We begin by addressing the March 4, 2003, order entered upon remand, the appeal of which is our case No. A-03-375. Jerry argues that the district court, in its order, was without authority to use evidence of Tracy's income for years other than 1995 through 1997 and to calculate Jerry's child support obligation using a method different from the method mandated by this court. He contends that the district court exceeded its authority on remand.
[6-8] In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order. In re Interest of J.L.M. et al., 234 Neb. 381, 451 N.W.2d 377 (1990). As a result of an order for remand and mandate from an appellate court, a trial court is obligated to adhere to the mandate and render judgment within the mandate's purview. Id. "[W]hen a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate." Anderson/Couvillon v. Nebraska Dept. of Soc. Servs., 253 Neb. 813, 819, 572 N.W.2d 362, 367 (1998).
We first address the evidence received and considered by the district court. In Mace III, we stated that on remand, the district court could receive evidence of Tracy's monthly net income for 1995 through 1997, and specified, "This is the only additional evidence that the trial court may consider on remand." (Emphasis supplied.) On remand, the district court initially adhered to the mandate by receiving evidence of Tracy's income for 1996 and 1997 and refusing evidence of her income for 1993, 1994, 1998, and 1999. However, in rendering its decision, in which it was required to implement the mandate and follow this court's instructions, the district court, deeming evidence of Tracy's 1998 income "pertinent," reversed its earlier ruling and received such evidence. Clearly, the district court disobeyed this court's mandate.
In the April 2001 order, the district court considered Jerry's support obligation to Kirsty when computing his support obligation to Christopher, Michael, and Anita, and in turn considered the latter obligation in determining the former. Upon our consideration of that order in Mace III, we noted that under Prochaska v. Prochaska, 6 Neb. App. 302, 573 N.W.2d 777 (1998), and Brooks v. Brooks, 261 Neb. 289, 622 N.W.2d 670 (2001), the district court did not abuse its discretion in employing this calculation method, and we remanded "so the trial court can calculate Jerry's support obligation using the same calculation method."
[9] On remand, the district court expressly refused to employ the method mandated by this court for recalculating Jerry's support obligation. The court justified its refusal upon the decision in Brooks, noting that Brooks does not require a court to use the Prochaska method of interdependent arithmetic to calculate a party's support obligation in light of subsequent children. While we agree that Brooks limits the effect of our decision in Prochaska, see Emery v. Moffett, 269 Neb. 867, 697 N.W.2d 249 (2005), the correct application of Prochaska was not a proper subject for the district court's determination in implementing our remand. At the time when the district court was required to implement our remand, our determination had become the law of the case. See Thomas v. State, 268 Neb. 594, 685 N.W.2d 66 (2004) (under "law of the case" doctrine, holdings of appellate court on questions presented to it in reviewing proceedings of trial court conclusively settle, for the purpose of that litigation, all matters ruled upon, either expressly or by necessary implication). The district court lacked authority to deviate from the instructions mandated by this court.

Deviation From Guidelines for Subsequent Child.
Jerry asserts that despite this court's mandate authorizing a deviation from the guidelines for Kirsty, the district court used current law and guidelines to deny Jerry the deviation. He argues that because this court did not authorize a new trial, the rules, case law, and statutes in effect at the time of the 1999 trial controlled the district court's March 4, 2003, order concerning the remand. We agree. The instructions of this court limited the authority of the district court upon remand.
Jerry alleges that although the district court reduced his monthly child support obligation for the parties' three children from $825 to $788, it erred in not granting a deviation for Kirsty. The district court attached two guidelines calculations to its order. The first calculation, which the district court implemented, simply considered the parties' 1999 net incomes and calculated the support amounts, using the 1999 guidelines, without any consideration for Kirsty. This calculation showed a support obligation for three children of $788.40, which, when rounded to an even dollar amount, is the figure ordered by the district court. Thus, it is clear that contrary to Jerry's argument, in the first calculation the district court used the 1999 version of the guidelines rather than the then current version. But it is equally clear that the district court's first calculation omitted any consideration for Kirsty.
The second calculation attached to the district court's March 4, 2003, order on remand represented the district court's calculations using the interdependent arithmetic approach of Prochaska v. Prochaska, 6 Neb. App. 302, 573 N.W.2d 777 (1998). This calculation does give consideration to Kirsty and implements the method initially used in the district court in the second trial after remand, which is the method we approved and mandated in Mace III. Further, this calculation utilizes the 1999 net income figures for Jerry and Wanda, which is also in accordance with our mandate. (The second calculation results in support amounts to be paid by Jerry of $687 for three children, $573 for two children, and $399 for one child. Jerry makes no assignment of error regarding the accuracy of this calculation, and we accordingly do not address any issue regarding the correctness of the second calculation.) Nevertheless, despite the clear requirement of our mandate, the district court's order used the first calculation and rejected the second calculation.
The district court erred in refusing to implement our mandate. Accordingly, we reverse the March 4, 2003, order on remand, and remand the cause with instructions to modify Jerry's support obligation, retroactively to February 1, 1999, to the amounts of $687 for three children, $573 for two children, and $399 for one child.
We next turn our attention to the March 4, 2003, order on Wanda's 2002 application for modification.

Material Change of Circumstances.
[10] Jerry contends that there was no material change of circumstances to support the district court's March 4, 2003, modification because there was no evidence that Jerry's child support obligation changed by 10 percent or more. Paragraph Q of the guidelines provides, in part, that a rebuttable presumption of a material change of circumstances is established when application of the guidelines results in a variation by 10 percent or more of the current child support obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months.
Jerry's argument is premised on the "current" support obligation's being $788 per month, i.e., the support amount for three children determined in the March 4, 2002, order on remand. However, Jerry appealed that determination, and as discussed above, we have reversed that determination and remanded with directions to order support at the rate of $687 per month. Paragraph Q of the guidelines, as applied to the instant case, would require a threshold increase of $68.70, for the required duration, to establish a rebuttable presumption of a material change of circumstances. The district court ordered that support be increased to $825 per month, which is a monthly increase of $138 over the amount we have mandated above. Thus, under paragraph Q of the guidelines, the district court's calculations would support its determination that a material change of circumstances existed.

Obligation to Subsequent Child; Paragraph T.
Jerry asserts that although the district court stated in its modification order that it considered Jerry's obligation to Kirsty, the district court did not show how it considered this obligation. Jerry contends, therefore, that despite the district court's assertion to the contrary, it did not consider his obligation to Kirsty. In a separate assignment, Jerry also contends that the district court erred in using his child support obligation from the original decree, rather than that from the most recent modification, as its baseline. Because these assignments are closely related, we consider them together.
Upon consideration of Wanda's October 2002 application, the district court calculated support under the guidelines to be $839 per month for the three children of Jerry and Wanda. The court attached a calculation to the order showing how that amount was computed. That calculation omits any consideration of Jerry's obligation to Kirsty. In the order, the court stated that it had "considered [Jerry's] obligation to a child born to him and [Tracy] subsequently to the [d]ecree." The court also stated that it had applied paragraph T of the guidelines and, in so doing, reduced Jerry's support obligation for the parties' three children from $839 to $825, the latter amount being the amount "ordered in 1992 for 3 children."
[11] Paragraph T was added to the guidelines and became effective on September 1, 2002, and it states:
An obligor shall not be allowed a reduction in an existing support order solely because of the birth, adoption, or acknowledgment of subsequent children of the obligor; however, a duty to provide regular support for subsequent children may be raised as a defense to an action for an upward modification of such existing support order.
There are two problems with the district court's application of paragraph T. First, in the instant case, the amount of the "existing support order" would be the amount that we have mandated above in regard to case No. A-03-375. In the proceedings in case No. A-03-376, Jerry was not seeking a reduction in support; Wanda was seeking an increase. By utilizing a calculation that considered only the initial support obligation for the three subject children as of the date of the initial decree, the district court deprived Jerry of the defense of paragraph T concerning Jerry's obligation to support Kirsty.
[12] Secondly, and more importantly, the district court failed to justify its methodology by showing that it had "`"done the math."'" See Gallner v. Hoffman, 264 Neb. 995, 1002, 653 N.W.2d 838, 844 (2002) (quoting Stewart v. Stewart, 9 Neb. App. 431, 613 N.W.2d 486 (2000)). In case No. A-03-376, unlike in case No. A-03-375, there has been no previous appeal and there is no earlier mandate binding the trial court's determination of what methodology to use in recognizing Jerry's obligation to Kirsty. In Emery v. Moffett, 269 Neb. 867, 697 N.W.2d 249 (2005), the Nebraska Supreme Court reiterated its earlier holding in Brooks v. Brooks, 261 Neb. 289, 622 N.W.2d 670 (2001), that a trial court has discretion to choose whether and how to calculate a deduction for subsequent children, but that it must do so in a manner that does not benefit one family at the expense of the other. In the instant case, the "method" selected by the district court clearly benefits the three children of Jerry and Wanda at the expense of Kirsty. While the district court was not, in case No. A-03-376, restricted to the methodology of Prochaska v. Prochaska, 6 Neb. App. 302, 573 N.W.2d 777 (1998), it was required to use some principled basis that did not benefit one family at the expense of the other. In failing to do so, the district court abused its discretion.

Jerry's Ability to Increase His Income.
[13,14] Jerry argues that after the January 29, 1999, order stating that he had a medical condition which limited his earnings, there was no appeal or evidence on which to base the district court's March 4, 2003, finding in case No. A-03-376 that Jerry "has the ability to earn more if he cares to." We agree. A district court may consider earning capacity in lieu of a parent's actual, present income pursuant to paragraph D of the guidelines. However, paragraph D contemplates that the court consider "factors such as work history, education, occupational skills, and job opportunities." The evidence in the record before us focuses solely on present earnings. Neither party presented evidence to support a determination that Jerry's earning capacity differed from his actual, present income. Earning capacity may be used as a basis for an initial determination of child support under the guidelines where evidence is presented that the parent is capable of realizing such capacity through reasonable effort. Claborn v. Claborn, 267 Neb. 201, 673 N.W.2d 533 (2004). Because neither party presented any such evidence, the district court abused its discretion in substituting its opinion concerning Jerry's earning capacity for Jerry's actual, present income.
The district court's order granting Wanda's October 2002 application and increasing Jerry's child support must be reversed, and the cause remanded with directions that the district court shall, based solely upon the existing evidentiary record, utilize a method for calculating the deduction to be allowed for Jerry's obligation to Kirsty that does not benefit one family at the expense of the other.

Attorney Fees.
[15] Jerry alleges that the district court erred in awarding attorney fees to Wanda. He argues that Wanda's application for modification was frivolous and that there was no rational basis for the award or the amount chosen. Customarily in dissolution cases, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits. Noonan v. Noonan, 261 Neb. 552, 624 N.W.2d 314 (2001).
[16] Although Jerry now argues that Wanda's application was frivolous, we find nothing in the record to suggest that any such contention was presented to the district court. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. Professional Bus. Servs. v. Rosno, 268 Neb. 99, 680 N.W.2d 176 (2004). Moreover, the fees were awarded against Jerry, who did not initiate the modification proceeding, rather than Wanda, who commenced the attempt to modify.
Because we have determined that the district court abused its discretion in granting the support increase to Wanda upon her application, it is not clear that Wanda will be a prevailing party. Because it will be necessary upon remand for the district court to determine what relief, if any, to which Wanda should be entitled, we believe that the best resolution of this assignment is to vacate the order granting attorney fees, for further consideration by the district court upon remand based solely upon the existing evidentiary record.

CONCLUSION
In case No. A-03-375, because we have determined that the district court failed to comply with the mandate of this court in Mace III, we reverse the judgment, and remand the cause with directions to modify Jerry's support obligation, retroactively to February 1, 1999, to the amounts of $687 for three children, $573 for two children, and $399 for one child.
In case No. A-03-376, the district court's order granting Wanda's October 2002 application and increasing Jerry's child support obligation must be reversed, and the cause remanded with directions that the district court shall, based solely upon the existing evidentiary record, utilize a method for calculating the deduction to be allowed for Jerry's obligation to Kirsty that does not benefit one family at the expense of the other. Additionally, the award of attorney fees to Wanda is vacated, and upon remand, the district court shall, based solely upon the existing evidentiary record, determine whether Wanda should be awarded any attorney fees and, if so, the amount thereof.
JUDGMENT IN No. A-03-375 REVERSED, AND CAUSE REMANDED WITH DIRECTIONS.
JUDGMENT IN No. A-03-376 REVERSED IN PART, AND IN PART VACATED AND REMANDED WITH DIRECTIONS.