JOHN S. SWENSON, APPELLEE, V. HILDEGARDE M. SWENSON, NOW KNOWN AS HILDEGARDE M. DALE, APPELLANT.

575 N.W. 2d 612

Filed March 20, 1998.    No. S-96-1005.

Rex R. Schultze and Riko E. Bishop, of Perry, Guthery, Haase & Gessford, P.C., for appellant.

Donald A. Roberts, of Lustgarten & Roberts, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

MCCORMACK, J.

Hildegarde M. Swenson appeals from the order of the district court for Douglas County, Nebraska, modifying her divorce decree which instructed her to use preferred health care providers for her minor child's needs and directed her to pay all uninsured costs connected with using a nonparticipating surgeon for her daughter's previous surgery. We, on our own motion, removed this case to our docket pursuant to our authority to regulate the dockets of the Nebraska Court of Appeals and this court. We reverse.

## BACKGROUND

John S. Swenson and Hildegarde M. Swenson, now known as Hildegarde M. Dale, were divorced on February 23, 1990. Under the parties' property settlement agreement, the parties were to split equally any medical, hospitalization, and dental expenses not paid by insurance for each of the minor children of the parties. Dale initially carried the health and accident insurance covering the two minor children. Between the time of the original decree and the time that the motion for modification in this case was filed, however, the health and accident insurance for the two minor children was changed so that they were covered under a health and accident policy issued to Dale's new husband. The record does not reflect what differences, if any, there are between the coverage provided for the two minor children by Dale's health and accident policy in effect at the time of the decree and the policy now carried by her new husband. Under the new policy, there are some physicians who are considered participating physicians and some who are not. If a participating physician is used, the amount left for the parties to

pay after their insurance pays is generally less than if the physician used was a nonparticipating physician. If the physician is a nonparticipating physician, the noncovered medical expense is the difference between what the physician charges and what the insurance company pays. The decree was subsequently modified in April 1994, but this modification did not affect the insurance requirements set out in the original decree.

The parties' child Inga was 15 years old when the surgery which is at issue was performed. Inga was adopted as an infant, and the parties knew at that time that she would require major surgery to bring her jaw into alignment. The surgery Inga required involved breaking her jaw and performing a chin adjustment. Inga had been an orthodontic patient of Dr. Robert Glenn, who recommended Dr. David Blaha for the surgery. Dale did not know at the time of the recommendation whether Blaha was a participating physician, but she determined prior to surgery that he was not a participating physician. When Swenson learned that Blaha was not a participating physician, he objected to using Blaha for the surgery, wanting to use someone in Omaha, Nebraska, who would be a participating physician to reduce the out-of-pocket expenses of the parties. Dale chose Blaha to perform the surgery.

At the outset of trial, the parties stipulated that there were two doctors in Lincoln, Nebraska, who were qualified to perform the surgery, specifically a Dr. Wickless, who was a participating physician under Dale's health plan, and Blaha, who was a nonparticipating physician under the plan. Wickless, however, referred such cases to Blaha. Wickless informed Dale that he had to refer Inga to Blaha because of the complications in her case. Additionally, the parties stipulated that there are four oral surgeons in Omaha who are qualified to perform this type of surgery and who are participating physicians under Dale's insurance.

Dale testified that she chose to have Blaha perform the surgery for a variety of reasons, including the convenience, the ability to stay with her daughter in the hospital at night, the support she would receive from her hometown of Lincoln, the availability of Blaha for postsurgical problems, and her feeling that Blaha would do the best job for Inga and give her the best care.

The charge for the surgery related to the breaking of Inga's jaw was $4,811.40. The chin adjustment was an additional $970 and was not covered by insurance. To this total cost of $5,781.40, a $403 credit was applied by Blaha, reducing his charges to $5,378.40. The noncovered hospital charge was $189.83, making a total noncovered expense of $5,568, with each party's one-half share totaling $2,784. However, Swenson alleged in his petition that if Dale had used a participating physician, each party would be responsible for only approximately $845 of uninsured medical expense, as opposed to the approximately $2,890 each party was liable for because of the use of Blaha.

Swenson filed a petition to modify, requesting that Dale use a participating physician for medical services for Inga, and if Dale did not use participating physicians, that she should be responsible for any uninsured medical expenses. Dale filed a cross-petition placing at issue the use of a participating physician and requesting that Swenson be responsible for one-half of the oral surgery for Inga, whether or not a participating physician is used. After the petition to modify was filed but before a decision was rendered, Dale chose to go forward with the surgery.

The district court held that Swenson should pay one-half of what the uninsured costs would have been if a participating physician had been used. Dale was ordered to pay the costs connected with using a nonparticipating surgeon. The district court modified the divorce decree to provide as follows:

> That the Respondent shall use preferred care providers for any health needs for the minor child, but in the event the Respondent uses non-preferred care providers, Respondent shall be responsible for all uninsured medical expenses for the minor child other than the amount that would have been paid had a preferred care provider been used, which amount would be divided equally between the parties.

## ASSIGNMENTS OF ERROR

Summarized and restated, Dale asserts that the district court erred in modifying the divorce decree because (1) Swenson did not show a material change in circumstances affecting the best

interests of the child, (2) the divorce decree was not ambiguous in its terms, and (3) said modification does not consider the best interests of the child and penalizes Dale by making her responsible for all noncovered expenses if she uses a nonparticipating provider.

## STANDARD OF REVIEW

Modification of a dissolution decree, child visitation, and amount of child support are matters initially entrusted to the discretion of the trial court, whose decisions are to be reviewed on appeal de novo on the record and will be affirmed absent an abuse of discretion. *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997).

Although in conducting its de novo review of a modification of a dissolution decree an appellate court reaches a conclusion independent of the trial court, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

Our initial inquiry in the present case is whether a material change in circumstances occurred warranting a modification of the dissolution decree. In the context of marital dissolutions, a material change of circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Smith-Helstrom v. Yonker, supra.*

Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in

income, and whether the change is temporary or permanent. *Sabatka v. Sabatka, supra.*

The record does not reflect the terms of Dale's health and accident policy at the time of the decree, nor does the record reflect whether the terms of the original policy with regard to participating and nonparticipating providers are any different from the health and accident policy now provided for Inga. Therefore there is no basis in the record for determination whether there was a material change of circumstances with regard to the health and accident insurance policy to be provided for the Inga.

## CONCLUSION

Having found no material change in circumstances requiring modification of the parties' decree, we find the district court to have abused its discretion. The judgment of the district court is therefore reversed.

REVERSED.