KATHRYN M. DUELING, APPELLEE, V.
ROY B. DUELING, APPELLANT.

601 N.W. 2d 516

Filed October 15, 1999.   No. S-98-402.

Phillip G. Wright, of Quinn & Wright, for appellant.

Kathy Pate Knickrehm and David L. Herzog, of Herzog & Herzog, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Roy B. Dueling appeals from an order of the district court for Douglas County that modified his child support obligation. He contends that the district court erred in considering income from his second job in making its calculations. We find no error and therefore affirm the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

Roy and Kathryn M. Dueling were married on June 9, 1978, in Omaha, Nebraska. During their marriage they had two children, born July 5, 1979, and October 10, 1984. The marriage was dissolved by a decree entered by the district court for Douglas County on January 31, 1992. The court granted custody of the minor children to Kathryn with reasonable rights of visitation to Roy. Under the decree, Roy was required to pay child support in the amount of $268.40 per month until each of the children reached majority, died, or became emancipated. He was also required to pay $165 per month, representing his share of child-care expenses.

On March 14, 1997, Roy filed an application to modify the decree by eliminating the provision requiring him to pay child-care expenses, asserting a substantial change of circumstances in that the children no longer required day-care services. Kathryn filed an answer denying this allegation and a cross-petition alleging that the original child support was "insufficient and not in conformity with the Nebraska Supreme Court Guidelines and should be modified as a matter of fact and as a matter of law." She also sought other affirmative relief not pertinent to this appeal. In his reply, Roy admitted that Kathryn was the custodial

parent but denied the remaining allegations contained in the cross-petition.

The evidence adduced at a hearing on December 23, 1997, reflects that Roy worked 40 hours per week at what he characterized as his "permanent job" with Ralston Public Schools and 24 hours per week at his "part-time job" with Oriental Trading Company. His total monthly income from both jobs was $2,338.72, of which $1,464.72 was derived from his full-time employment with Ralston Public Schools. At the time of the hearing, he had held the part-time position for approximately 6 years. The record reflects no intention or desire on Roy's part to terminate either his part-time or full-time employment. Kathryn is employed by Physicians Mutual Insurance Company on a full-time basis with gross monthly earnings of $1,248.02.

The district court modified the decree by eliminating the requirement that Roy pay the "child care expense" in the amount of $165 per month and increasing his child support obligation to $605.88 per month, with a reduction to $421.74 per month when the older child reaches majority. This child support increase was based on Roy's income from both his permanent job and his part-time job. In explaining this ruling from the bench, the court stated:

> I realize the law is somewhat different. I think the circumstances are such here that he's held a part-time job for so long that the $900 a month that he's earning, that it should be - and I am considering it - as part of his gross income for the purpose of determining child support.

Roy perfected this appeal which we transferred to our docket on our own motion.

## STANDARD OF REVIEW

Modification of a dissolution decree is entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999).

## ASSIGNMENT OF ERROR

Roy contends, restated, that the district court erred in considering income from his part-time job in calculating his child support obligation.

## ANALYSIS

A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. *Rauch v. Rauch, supra*; *Swenson v. Swenson*, 254 Neb. 242, 575 N.W.2d 612 (1998). Paragraph Q of the Nebraska Child Support Guidelines provides:

> Application of the child support guidelines which would result in a variation by 10 percent or more, upward or downward, of the current child support obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

At the direction of the trial court, both parties submitted affidavits containing the basic net income and support calculations pursuant to the Nebraska Child Support Guidelines, which included the income from Roy's full-time and part-time employment. Roy's calculation reflects that his monthly share of support would be $605.88. According to Kathryn's computation, Roy's monthly share of support was $610. Roy also submitted an affidavit calculating his share of support based solely upon the income from his full-time employment, which resulted in a monthly support share of $356.72. Each of these calculations results in a monthly support amount which exceeds the original child support award by more than 10 percent, and there is evidence from which it can be inferred that the parties' financial circumstances reflected in such computations had existed for 3 months and could reasonably be expected to last for an additional 6 months. Thus, a rebuttable presumption of a material change of circumstances exists pursuant to paragraph Q of the child support guidelines.

Roy does not challenge the existence of a material change of circumstances warranting an increase in his child support obligation, but, rather, contends that the amount of the increase is excessive. Based upon our holding in *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991), Roy asks that we reverse "for a calculation based upon Appellant's full-time job only." Brief for appellant at 6. In *Stuczynski*, the parties filed a petition for dissolution in July 1987 and the decree was entered November 28, 1988. The husband worked full time during the marriage and in November 1987, after the dissolution petition was filed, secured an additional, part-time position to help meet expenses incident to the separation, including employment training for his wife. The husband testified that he was tired of working 70 hours per week as required by the two jobs and did not wish to continue doing so after dissolution of the marriage.

We held:

> [A] party obligated to furnish child support is not required to undertake two separate employments when the party has one full-time job. A spouse with a full-time job, which job also furnishes substantial overtime, may not be required to work at a second job to furnish child support. If the earnings in such a second job are included in the calculation of the amount of child support due from the worker, the next result is a court requirement that the worker continue indefinitely at these two jobs to satisfy the court order.

*Id.* at 372, 471 N.W.2d at 125. We determined that under the facts presented, the district court abused its discretion in including income from the husband's second job in calculating his child support obligation, noting that inclusion of such income would not result in " 'a fair and equitable child support order.' " *Id.* at 373, 471 N.W.2d at 126.

The issue we must resolve in this case is whether *Stuczynski* establishes a bright line rule that a parent's income from a second job can never be considered in calculating his or her child support obligation. We conclude that it does not, for such a rule could permit a parent who works two jobs to pay less child support than one who derives the same income from the same number of hours worked for a single employer or from self-employment. The Nebraska Child Support Guidelines provide

that in calculating the amount of support to be paid, the court must consider the "Total Monthly Income," defined as the "income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for children of prior marriages." Nebraska Child Support Guidelines, paragraph D; Neb. Rev. Stat. § 42-364.16 (Reissue 1998). The guidelines are to be applied as a rebuttable presumption, and any deviation from the guidelines must take into consideration the best interests of the children. Nebraska Child Support Guidelines, paragraph C; § 42-364.16. Additionally, all orders for child support shall be established in accordance with the provisions of the guidelines "unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order." § 42-364.16. See, also, *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). Deviations are permissible under circumstances enumerated in the guidelines, including, "whenever the application of the guidelines in an individual case would be unjust or inappropriate." Nebraska Child Support Guidelines, paragraph C(5).

Based upon the language of § 42-364.16 and our child support guidelines promulgated pursuant thereto, it is clear that all income from employment, whether full time or part time, must be included in the initial calculation, which then becomes a rebuttable presumption of appropriate support. A parent who believes that the inclusion of certain income would be unjust or inappropriate may rebut the presumption by offering evidence in support of his or her position that a deviation from the guidelines is warranted for that reason. A determination of whether to include income from a second job should be made on a case-by-case basis, in the context of whether deviation from the guidelines by exclusion of such income is necessary to achieve a fair and equitable child support order. Relevant considerations include the previous history of employment, the qualifications for the second job, the extent to which the parent may be under employed in the primary job, the health of the individual, the needs of the family, the rigors of the primary job and the sec-

ond job, and all other circumstances. See *Cochran v. Cochran*, 14 Va. App. 827, 419 S.E.2d 419 (1992).

While we stated in *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991), that it would be unfair to *require* a noncustodial parent to work 70 hours a week against his or her will in order to meet a child support obligation, it does not necessarily follow that when a parent freely chooses to work more than the traditional 40-hour week over an extended period of time, his or her total income should not be considered in calculating a child support obligation. In the present case, Roy made no showing that he took the second job only for a specific, limited reason. Rather, he testified that he had held the job for 5 or 6 years prior to the modification hearing. He offered no evidence or testimony to establish that the second job was burdensome or that he did not wish to continue working the number of hours necessitated by the two jobs. Because the evidence in this case does not establish that inclusion of income from both jobs would result in an unfair or inequitable child support order, the presumption that income from both jobs should be included in determining Roy's child support obligation was not rebutted.

Kathryn submitted a motion and affidavit after argument requesting an award of attorney fees pursuant to Neb. Ct. R. of Prac. 9F (rev. 1996). We hereby award the sum of $1,000 for attorney fees in this court.

## CONCLUSION

The district court did not err in considering the income from Roy's part-time job, as well as his full-time employment, in calculating his child support obligation pursuant to the Nebraska Child Support Guidelines. The record contains insufficient evidence to rebut the presumption that the obligation thus determined was fair and equitable. Accordingly, we affirm the judgment of the district court and award Kathryn attorney fees of $1,000 for services performed on appeal.

AFFIRMED.